THE CONSOLIDATED TANK-LINE COMPANY, Appellant, v.
W. H. HUNT, Appellee.

**Property Exempt from Execution:** CONSTRUCTION OF STATUTE: TEAM: LABORER. One who is the head of a family, and who is engaged in the sale of oils at retail from a tank wagon, which is sometimes driven by himself, and sometimes by his minor son, and who also makes sales from a storeroom where his oils are stored, but who makes the greater part of his sales from the wagon, and earns his living thereby, is a laborer, who habitually earns his living by the use of a team and wagon, within the meaning of section 3072 of the Code, and is entitled to hold such team and wagon exempt from execution.

*Appeal from Page District Court.*—HON. H. E. DEEMER, Judge.

TUESDAY, MAY 26, 1891.

APPELLANT brought an action to recover for oils sold to the defendant, and obtained an attachment which was levied on a team, harness and oil wagon. The defendant moved the court to discharge the attached property, and assigned as reasons therefor the following: "The said team and harness and oil wagon is the only one owned by the defendant; that defendant is a married man, and the head of a family, and resided in Clarinda, Page county, Iowa; that said team, harness and wagon is the only one owned by defendant, and the only one by which defendant habitually earns a living for his family. It is, therefore, exempt under the law, as is more fully shown by affidavits hereto attached marked 'A' and 'B' and made a part hereof." Affidavits were filed in support of, and against, the motion, upon a consideration of which the court below sustained the motion, and from that order the plaintiff appeals.—*Affirmed.*

*W. W. Morsman*, for appellant.

*Clark & Hill* and *J. R. Good*, for appellee.

Granger, J.—The testimony gives support to the following facts: That the defendent is a resident of Page county, Iowa, a married man, and the head of a family; that prior to March, 1889, he was engaged in selling oils and gasoline at Clarinda, Iowa; that after that he was engaged in a retail trade of those articles, having a place of business known as headquarters in the back room of a building on the north side of the square in Clarinda; from these "headquarters" for a time he delivered his sales in an ordinary wagon, and afterwards from the wagon in suit, known as a "tank wagon." The wholesale trade was discontinued June 27, 1889, for which trade his oils had been stored near the depot. After the discontinuance of the wholesale trade, his oils for the retail trade were stored at, and delivered from, the "headquarters." A few sales were made, including the delivery, at the headquarters; but the general business was carried on by orders being left at headquarters to be filled about the city from the tank wagon, and in some cases cans would be set out by the customers, and these were also filled from the wagon. At times the oils would be paid for at headquarters, but generally at the place of delivery. The team for the purpose of delivering the oils was sometimes driven by the defendant in person, and sometimes by his minor son, sixteen years of age. At times both were with the team. The evidence favors the view that most of the time the son was with the team, and delivered the oils, but performed such service for his father.

The oils were received at headquarters in quantities of from three to five barrels at a time. The team, harness and wagon were used by the defendant in this

business, and the business is the defendant's means of earning a living. The appellant insists that the facts do not sustain the action of the court. His counsel states his view of the law in these words: "In my judgment the right has been clearly defined by statute, and under the statute, in order to maintain the exemption, the debtor must show that he is a *teamster* or other *laborer*, who by his personal *use* of the property *habitually* earns his living."

The statute to be construed is as follows: "If the debtor is a resident of this state, and is the head of a family, he may hold exempt from execution the following property: * * * the horse or team * * * the wagon or other vehicle, with a proper harness or tackle, by the use of which the debtor, if a physician, public officer, farmer, teamster or other laborer, habitually earns his living." It is conceded on authority that the statute is to receive a liberal construction. It would be a grave disregard of the concession were we to hold to the view, claimed by the appellant, that because the team was driven by the son, though for the father, the debtor, he is not within the provisions of the law as to exemptions. Let us suppose one who is a laborer or teamster and earns his living by the personal use of his team is disabled, we will say, totally, and a minor son, by the use of a team, supports the family. Will it be said that the owner, if a debtor, loses his right of exemption? Confining ourselves to the literal definition of the word "laborer" or "teamster" as quoted in argument, such a result might follow. But, looking to the law, and the purposes of its enactment, there is no difficulty in saying that such a case is clearly within its purview, and that the debtor would come within the statutory meaning of the word "teamster" or "laborer." If a widow, who is the head of a family, and also a debtor, owns a team, by the use of which her living is supplied, may she be divested of this

means of earning a living merely because she does not in person perform the labor of driving the team? These plain propositions pave the way to clearly observe the legislative purpose.

It is strenuously urged that the defendant is not a teamster nor laborer, but a merchant, and, as such, is not entitled to the exemption. It is true the defendant is engaged in a small way in the sale of merchandise. He has a back room of a building, used more for storage than for any other purpose, which is a base of supplies for his delivery system or business, and the business is carried on mainly by the use of the team, and it is manifest that, without the use of the team, he has no business to supply a living; for he says that the profits of completed sales at the headquarters would not pay his rent. Any person thus engaged in receiving and distributing oils must be said to be a laborer. He "is one who labors in a toilsome occupation." The use of the team is necessary to carry on the occupation, and, hence, if the occupation supplies his living, he earns his living by the use of his team. That the living is not wholly so earned is not material. The same exemption, upon the same conditions, is made to the physician, public officer and farmer, in which cases, it will be readily understood that the use of the team would be but an aid to the profession or calling. If a physician may have the exemption as an aid to the business of his profession by which he obtains a living, why may not the laborer, one who chops the wood in the forest, or quarries the rock from the hillside, to be put by the use of a team on the market, to supply his living, have the same protection? The fact that the laborer utilizes his efforts in the way of an independent rather than a dependent business should not operate to his disadvantage. This is the situation of the defendant. If he employed another to do the work of receiving the oils, replenishing the tank and delivering

about the city, the employe would without ques-
tion be a laborer. The defendant is not less so.
merely because he directs and owns the business,
besides performing the labor.

The district court must have found from the evi-
dence that the defendant was within the statutory
meaning a teamster or laborer, and that finding is.
conclusive upon us, unless the record affirmatively
shows the court in error, and we do not think it does.
The case of *Root v. Gay*, 64 Iowa, 399, supports our
conclusion.  AFFIRMED.