In the Matter of Marvin D. HAHN and
Joyce M. Hahn, Debtors.

Bankruptcy No. 80–218–C.

United States Bankruptcy Court,
S. D. Iowa.

July 15, 1980.

Robert J. Spayde, Oskaloosa, Iowa, for debtors.

Stephen C. Gerard, II, Sigourney, Iowa, for Keokuk County State Bank.

MEMORANDUM OF DECISION

RICHARD STAGEMAN, Bankruptcy Judge.

At Des Moines, in the Southern District of Iowa, on the 15th day of July, 1980.

Marvin D. Hahn and Joyce M. Hahn filed a voluntary petition in bankruptcy on February 19, 1980. In Schedule B–4, annexed to the debtors' petition, Marvin D. Hahn claimed the following personal property as exempt by virtue of the provisions of Section 627, *Code of Iowa* (1979).

1977 F–250 Ford 4 × 4 truck

1975 Delta 6 × 20 gooseneck trailer

25,000 watt p.t.o. generator

180 A welder

Acetylene torch

air compressor

bolt assortment

paint sprayer

space heater

bench vise

1 tool box wrench set

special mechanic tools

construction tools

carpenter tools

Allis Chalmer WD45 tractor and loader

11' John Deere disc

4 sec. harrow and cart

Lillston rear cultivator

barge box and wagon

side dump and wagon

New Holland # 68 baler

New Holland # 50 bale thrower

60 gallons oil

5 gallons antifreeze

oil filters

(1) 20 × 24 farrowing house (insulated)

(1) 20 × 24 farrowing house

(1) 3 pen hog house

(3) 2 pen hog house

(1) 10 × 20 hog shelter

(4) 60 bushel hog feeders

(1) pig creep

(3) round pig feeders

(3) round pig waterers

(1) 80 gallon hog waterer

(1) electric fence set (posts and wires)

(1) cattle lick tank

On April 2, 1980, the Keokuk County State Bank filed an objection to the debtor's claimed exemptions. It charges that the debtor cannot have the exemptions ordinarily allowed for a farmer because the debtor was not a farmer on the date his petition was filed. Alternatively, if he is deemed to be a farmer certain of the exemptions claimed are not properly "tools" or "instruments" of a farmer. It further objects that the debtor is claiming more than one "vehicle."

The objections were heard on May 5, 1980. The following persons appeared: Marvin D. Hahn, in person and by his attorney, Robert J. Spayde; the Keokuk County State Bank, by its attorney, Stephen C. Gerard II.

Title 11 U.S.C. § 522(b)(2)(A) states that an individual debtor may exempt from property of the estate any property that is exempt under Federal law (other than the specific statutory federal exemptions set out under 11 U.S.C. § 522(d)), "or state or local law that is applicable on the date of the filing of the petition at the place in which the debtor's domicile has been located for 180 days immediately preceding the date of the filing of the petition, or for a longer portion of such 180 day period than in any other place; . . ."

Iowa's exemption statute, Section 627.6, *Code of Iowa* (1979), provides:

> [i]f a debtor is a resident of this state and the head of a family, he may hold exempt from execution the following property:
> 17. The proper tools, instruments, or books of the debtor, if a farmer . . .
>
> 18. If the debtor is a . . . farmer, . . . a team, consisting of not more than two horses or mules, or two yoke of cattle, and the wagon or other vehicle, with the proper harness or tackle by the use of which he habitually earns his living, . . . *

It is indeed age-encrusted and ill-suited for the twentieth century.

Nevertheless, under our system of government, lawmaking is within the legislative province and not within the province of the judiciary. It is also a self evident rule of statutory construction that the intention of the lawmakers must be ascertained and carried out. Where the intention of the legislature is not clear the courts must have regard for the statute's object and spirit, and follow that construction which carries out the purpose for which it was passed. 35 C.J.S. (Exemptions) § 4(a), pp. 13–14.

There are five basic purposes for exemption laws:

1. To provide a debtor enough money to survive.

2. To protect his dignity and his cultural and religious identity.

3. To afford a means of financial rehabilitation.

4. To protect the family unit from impoverishment.

5. To spread the burden of the debtor's support from society to his creditors. See Resnich, *Prudent Planning or Fraudulent Transfer? The Use of Nonexempt Assets to Purchase or Improve Exempt Property on the Eve of Bankruptcy*, 31 Rutgers L.Rev. 615, p. 621 (1978).

In Iowa the Supreme Court early stated that Iowa's exemption statutes are based on public policy to render each citizen independent and above want, shelter for a man and his family safe from abject poverty and beyond the reach of creditors who could turn them into beggars. See *Charles v. Lamberson*, 1 Iowa 435 (1855).

In interpreting exemption statutes the courts must not substantially depart from their express language, *Wertz v. Hale*, 234 N.W. 534 (Iowa 1931), or extend the legislative grant. *Iowa Methodist Hospital v. Long*, 12 N.W.2d 171 (Iowa 1944).

---

* This wording has not changed since July 1, 1851, and is very similar to the exemptions of the Revised Statute of Iowa Territory, Chapter 155, § 5 (Blue Book 1843).

The Iowa exemption statute uses the terms tools, instruments, and vehicle without limitation, qualification, or definition. It must be that they intended to avoid constantly reoccurring questions difficult of solution as to whether or not a particular item of personal property came within the meaning of those terms. The burden of answering such questions then falls necessarily upon the courts.

The Supreme Court of Iowa, divining the beneficent spirit and high purpose of the exemption statutes has used as a basic guideline, and repeatedly decreed and established, that whatever else they shall be liberally construed in favor of those claiming their benefits. This has been the pronouncement of a long line of decisions from *Bevan v. Hayden,* 13 Iowa 122 (1862), to *Frudden Lumber Co. v. Clifton,* 183 N.W.2d 201 (Iowa 1971).

■ Exemption rights in bankruptcy are determined as of the time of the bankruptcy filing. 11 U.S.C. § 522(b)(2)(A). *Mansell v. Carrall,* 379 F.2d 682 (10th Cir. 1967).

■ It is conceded that at the time of bankruptcy, Marvin D. Hahn, was a resident of the state and the head of a family. He gives his occupation (Statement of Affairs—Q. 2) as "Farming, trucking, custom bailing and combining, and school bus driver." He habitually had made his living at the occupation of farming, although at the time of filing he was not so engaged. The debtor testified, however, that farming was his life's work and that he had no intention to abandon that occupation. In *In re Fly,* 110 F. 141 (D.C.Cal.1901), a bankrupt who was engaged in farming was entitled to a farmer's exemption even though he stopped farming shortly before he filed his bankruptcy case and was, in fact, engaged in another pursuit. See *Pease v. Price,* 69 N.W. 1120 (Iowa 1897).

■ It is not necessary that the person claiming an exemption wholly earn a livelihood using the items claimed exempt. *Equitable Life Assur. Soc. of U. S. v. Goode,* 70 N.W. 113 (Iowa 1897).

The objecting creditor further complains that some of the items of property are not "tools" or "instruments" used by a farmer, and that the debtor is entitled to but one "vehicle" among the several claimed as exempt.

■ A tool is commonly defined as an instrument of manual operation as compared to an appliance moved by machinery. *Murphy v. Continental Ins. Co.,* 157 N.W. 855 (Iowa 1916). For example, a saw and hammer would be considered tools. *Supra. Accord, Adams v. New York Bowery Fire Ins. Co.,* 51 N.W. 1149 (Iowa 1892); *Peyton v. Farmers Nat. Bank of Hillsboro, Texas,* 261 F. 326 (5th Cir. 1919).

■ The term "instrument," which is synonymous with implement, is more inclusive than "tool." *Baker v. Maxwell,* 168 N.W. 160 (Iowa 1918). It is an item reasonably fitted or employed as a means of making labor more effective. *Supra.* "Instrument" has been held to include a very wide range of implements reasonably fitted to be employed in making their owner's labor in his chosen employment more effective. *Supra* at 161.

■ A "vehicle" is that in or on which a person or thing is carried or may be carried. *State v. Johnston,* 252 Iowa 335, 105 N.W.2d 700 (1960). It is a means of conveyance. *Employers' Liability Assur. Corp. v. Youghiogheny & Ohio Coal Co.,* 214 F.2d 418 (8th Cir. 1954). A wheelbarrow, a covered wagon, a Rolls-Royce, a patient mule, a Man of War, and possibly a Pullman Car or ocean liner is a "vehicle." *U. S. v. One Ford Coach,* 307 U.S. 219, 59 S.Ct. 861, 83 L.Ed. 1249 (1939).

■ Nearly all of the personal property claimed exempt by the debtor as a farmer qualifies as farm tools or instruments. The operation of a farm calls for many manual skills that require tools necessary to maintain buildings, mend fences and repair machinery. Tools that might otherwise be classified as those of a mechanic or a carpenter are commonly used by farmers and their use reasonably related to a farming operation. The almost entirely steel, com-

plex, and variegated machines of the modern farmer require the use of welders and a wide variety of mechanic's tools if it is to be properly maintained. It is axiomatic that the maintenance of wooden and metal farm buildings require periodic painting, as well as carpentry tools and construction equipment if they are to be kept in a condition that will make them useful for a farming operation.

In the case *Baker v. Maxwell, supra* at 160, a sawmiller sought to exempt a portable steam powered saw from execution. He and his family used the saw to cut wood for others. The Supreme Court held it to be a proper tool or instrument. It concluded that the property was not restricted to the narrow definition of tool since the Iowa statute also included the term instrument. It further held that a tool need not be a necessity but only a proper one. The statute fixes no limit upon the value or size of such instruments. *Supra* at 161. The interesting dicta of the *Baker* case is,

> For [a] farmer it may properly include a gang plow, a harvester, a traction engine, or any or all of the multitude of modern farm machinery which may be useful or proper, and the fact that it costs hundreds or perhaps thousands of dollars, or is operated by steam, gas or electricity, or may require an expert to use it successfully, will not expose it to seizure as nonexempt property so long as it be fit and proper for the farmer's use.

*Supra* at 161.

The court is of the opinion that the case of *Meyer v. Meyer*, 23 Iowa 359 (1867), cited in *Vandeventer v. Nelson*, 163 N.W. 354 (Iowa 1917), is distinguishable from this case. In the *Meyer* case the court held that a threshing machine was not a proper instrument of frontier farming when used in custom threshing. Nevertheless, a portion of the court felt even then that they did not wish to be bound if a case should arise, "in which a threshing machine was claimed by a farmer who owned and needed it for actual use, and did not keep and own it for the purpose of gain." At pp. 376–377.

The hog raising equipment designated "houses" are really more implements than buildings as the term would ordinarily imply. They are small and portable. A farrowing pen can be easily moved from place to place and is only a temporary shelter for shoats, *en ventre sa mere* or newborn, and sows. Farrowing houses and portable hog pens are not part of the freehold, and ordinarily not intended to pass or descend with the land. Therefore, they are personalty. They have no other utility than in the raising and care of swine. Nothing could be more characteristic of the occupation of farming than that activity. The hog raising items of property claimed by the debtor as exempt property are exempt to him as a farmer.

The debtor has failed to establish that the 25,000 watt p. t. o. generator has any proper relationship to a normal farming operation, and it is not exempt.

Subsection 17 of § 627.6, *Code of Iowa* (1979) as quoted above holds exempt from execution the proper tools and instruments of a farmer. The Iowa Supreme Court has held, however, that a truck and an automobile owned by a farmer and used by him for general farm purposes, and including the marketing of farm produce, are not farm "tools or instruments" within the meaning of the exemption statute of Iowa, but are to be classed as vehicles "where the statute contains the further classification of a wagon or other vehicle, . . . [as provided for in § 327.6(18)]." *Farmers' Elevator & Live Stock Co. v. Satre*, 195 N.W. 1011 (Iowa 1923). In that case it is stated:

> In a broad sense, perhaps the wagon, or the truck and the automobile, all three are farm implements. Were it not for the specific classification in the statute of the 'proper tools, instruments, or books of the debtor, if a farmer,' and a further classification of 'the wagon or other vehicles, etc.,' the position of the appellee would be very convincing. But the statute mentions and classifies separately 'the proper tools, instruments,' used in the operation of the farm business and 'the wagon or other vehicle.' Undoubted-

ly the truck and automobile in question come within the latter classification and must therefore be considered strictly as vehicles, and not as farm tools.

It was earlier established in the case of *Lames v. Armstrong*, 144 N.W. 1 (1913), that an automobile is a vehicle within the Iowa exemption law as it serves the purpose of a wagon or other vehicle. This court questions the *Lames* decision, because in *Wertz v. Hale, supra* at 532, the Supreme Court held that a resident of this state and head of a family could not hold exempt from execution an automobile in addition to a team and harness. It equated the automobile with the team in terms of motive power. The Iowa exemption statute allowing a farmer a team and a wagon implies a source of motive power and a carrier. The tractor has replaced the team as a source of motive power, but a wagon or trailer which does not have its own source of power is still a wagon or other vehicle. In other words a tractor is a "motor vehicle" and a trailer is just a "vehicle." Making a farmer choose between his team and the wagon would make no sense as one is useless without the other, just as a tractor would be without a vehicle to pull when the transportation of goods was required.

The Ford truck claimed by the debtor and the gooseneck trailer represent a unit comprised of motive power source and carrier.

The debtor must therefore choose between a tractor-wagon combination or the truck and trailer combination, but he cannot have both.

It is therefore, ORDERED, that the objections to the exemptions claimed by the debtor, Marvin D. Hahn, as a farmer are sustained as to the 25,000 watt p. t. o. generator and his claim of both a truck and tractor and all other vehicles mentioned.

It is further, ORDERED, that the debtor elect within 10 days of the date of the entry of this order which vehicles he wishes set off as exempt to him in accordance with the foregoing memorandum of decision.

It is further, ORDERED, that the objections to the debtor's other claimed exemptions are overruled.