# United States Bankruptcy Appellate Panel
**FOR THE EIGHTH CIRCUIT**

---

No. 00-6016 NI

---

| | | |
|---|---|---|
| In re: | * | |
| | * | |
| Jon Arthur Kemmerer and | * | |
| Elaine Marie Kemmerer, | * | |
| | * | |
| Debtors. | * | |
| | * | |
| Wesley B. Huisinga, | * | Appeal from the United States |
| | * | Bankruptcy Court for the |
| Trustee-Appellant, | * | Northern District of Iowa |
| | * | |
| v. | * | |
| | * | |
| Jon Arthur Kemmerer and | * | |
| Elaine Marie Kemmerer, | * | |
| | * | |
| Debtors-Appellees. | * | |

---

Submitted: May 19, 2000
Filed: July 26, 2000

---

Before SCHERMER, SCOTT and DREHER, Bankruptcy Judges

SCHERMER, Bankruptcy Judge

Wesley B. Huisinga, Trustee ("Trustee") appeals the bankruptcy court order overruling the Trustee's objection to the exemption claimed by the Debtor Jon Kemmerer ("Debtor") in a certain individual retirement annuity. We have jurisdiction over this appeal from the final order of the bankruptcy court. See 28 U.S.C. § 158(b). For the reasons set forth below, we reverse.

ISSUE

The issue on appeal is whether the Debtor's individual retirement annuity is an individual retirement account within the scope of Iowa Code Section 627.6(8)(f) which the Debtor can exempt from property of his bankruptcy estate pursuant to 11 U.S.C. § 522(b)(2). We conclude that the Debtor's individual retirement annuity does not fall within the scope of Iowa Code Section 627.6(8)(f) and therefore cannot be exempted from the Debtor's bankruptcy estate.

BACKGROUND

The Debtor worked as an employee of Midland Press Corporation ("Midland") from 1992 through 1996. While employed at Midland, the Debtor participated in a retirement plan at Midland which qualified as a retirement plan pursuant to 26 U.S.C. § 401(k) (the "Midland 401(k) Plan"). During the course of his employment, the Debtor contributed $7,903.67 to the Midland 401(k) Plan and Midland contributed $4,780.06 to the plan on the Debtor's behalf. At the time the Debtor's employment with Midland terminated in 1996, the Debtor had a vested balance in the Midland 401(k) Plan of $16,426.91.

On November 6, 1996, the Trustee and Administrator of the Midland 401(k) Plan issued a check in the amount of $16,426.91 payable to "Equitable of Iowa/ TTEE/IRA fbo Jon A. Kemmerer," which amount was deposited into a newly established Equi-Select #I466982-OP Individual Retirement Annuity account (the "Equi-Select Account"). The Equi-Select Account is an individual retirement annuity and not an individual retirement account. The Debtor has not contributed any amounts to the Equi-Select Account since November 7, 1996. The Debtor has had unlimited access to the funds in the Equi-Select Account since November 7, 1996.

On June 2, 1999, the Debtor and his wife, Elaine Marie Kemmerer, filed a joint petition for relief under Chapter 7 of the United States Bankruptcy Code. In his schedules filed with the bankruptcy court, the Debtor listed his interest in the Equi-Select Account as personal property on Schedule B, under item 10 entitled "Annuities"[1] and claimed his interest in the Equi-Select Account as exempt under Section 627.6(8)(f) of the Iowa Code on Schedule C.

---

[1] The Debtor did not list the Equi-Select Account under item 11 of Schedule B entitled "Interests in IRA, ERISA, Keogh, or other pension or profit sharing plans."

On September 2, 1999, the Trustee timely filed an objection to the Debtor's claimed exemption in the Equi-Select Account. The Debtor and the Trustee stipulated that the Equi-Select Account had a value of $21,027.82 as of June 2, 1999. After a hearing, the bankruptcy court overruled the Trustee's objection to the Debtor's claimed exemption in the Equi-Select Account

## STANDARD OF REVIEW

The facts are not in dispute. We review the bankruptcy court's conclusions of law de novo. Fed. R. Bankr. P. 8013; Minnesota Department of Revenue v. United States, 184 F.3d 725, 727-28 (8th Cir. 1999); Eilbert v. Pelican (In re Eilbert), 162 F.3d 523, 525 (8th Cir. 1998); Waugh v. Internal Revenue Service (In re Waugh), 109 F.3d 489, 491 (8th Cir. 1997).

## DISCUSSION

Pursuant to Section 522(b) of the Bankruptcy Code, a debtor may exempt from property of the estate either: (1) certain property listed in Section 522(d) of the Bankruptcy Code, or (2) property which is exempt under applicable non-bankruptcy federal law and the state and local laws of the place where the debtor has been domiciled for the longest portion of the 180 days preceding the bankruptcy filing. A state may opt out of the exemptions enumerated in Section 522(d) of the Bankruptcy Code, in which case a debtor whose domicile is in such state is limited to the exemptions applicable under non-bankruptcy federal law and the laws of such state and locality. 11 U.S.C. § 522(b)(1).

The Debtor's domicile is Iowa which has opted out of the exemptions set forth in Section 522(d) of the Bankruptcy Code. Iowa Code § 627.10 (1998). Therefore, the only exemptions available to the Debtor are those recognized by Iowa and non-bankruptcy federal laws.

Section 627.6(8)(f) of the Iowa Code permits a debtor who is a resident of Iowa to hold exempt from execution the following:

f. Contributions and assets, including the accumulated earnings and market increases in value, in any of the plans or contracts as follows:

(1) Transfers from a retirement plan qualified under the Employee Retirement Income Security Act of 1974 (ERISA), as codified at 29 U.S.C. § 1001 et seq., to another ERISA-qualified plan or to another pension or retirement plan authorized under federal law, as described in subparagraph (3).

. . .

(3) For simplified employee pension plans, self-employed pension plans, Keogh plans (also known as H.R. 10 plans), **individual retirement accounts**, Roth individual retirement accounts, savings incentive matched plans for employees, salary reduction simplified employee pension plans (also known as SARSEPs), and similar plans for retirement investments authorized in the future under federal law, the exemption for contributions shall not exceed, for each tax year of contributions, the actual amount of the contribution or two thousand dollars, whichever is less. . . .

(Emphasis added.) Iowa Code § 627.6(8)(f)(1) and (3) (Supp. 2000).

The issue before this Court is whether Section 627.6(8)(f) of the Iowa Code permits the Debtor to exempt the Equi-Select Account. We conclude that it does not.

By its express terms, Section 627.6(8)(f) of the Iowa Code permits the exemption of a transfer from an ERISA-qualified plan to another ERISA-qualified plan or to another pension or retirement plan authorized under federal law, as described in subparagraph (3). The Midland 401(k) Plan was clearly an ERISA-qualified plan. In dispute is whether or not the Equi-Select Account into which the funds from the Midland 401(k) Plan were transferred is "another pension or retirement plan authorized under federal law, as described in subparagraph (3)." Iowa Code § 627.6(8)(f)(1) (Supp. 2000).

Where a statute's language is plain, the court's sole function is to enforce such language according to its terms. Hartford Underwriters Insurance Company v. Union Planters Bank, N.A., 120 S.Ct. 1942, 1947 (2000). Exemption statutes are construed liberally in favor of the debtor; however, the purpose of such construction is to achieve the legislative intent as set forth in the statutory language, not to extend the provisions of the legislative grant. Eilbert v. Pelican (In re Eilbert), 162 F.3d 523, 526 (8th Cir. 1998) (citing Iowa Methodist Hosp. v. Long, 12 N.W.2d 171, 175 (Iowa 1943), Wertz v. Hale, 234 N.W. 534,

4

535 ( Iowa 1931), <u>In re Wiley</u>, 184 B.R. 759, 766 (N.D. Iowa 1995), <u>Matter of Knight</u>, 75 B.R. 838, 839 (Bankr. S.D. Iowa 1987)); <u>Huebner v. Farmers State Bank</u>, 986 F. 2d 1222 (8th Cir. 1993); <u>see also</u> Iowa Rule of Appellate Procedure 14(f) ("In construing statutes the court searches for the legislative intent as shown by what the legislature said, rather than what it should or might have said.").

The language of Section 627.6(8)(f) of the Iowa Code is clear. It lists as within its purview specific types of pensions and retirement funds authorized under federal law. It also expressly includes similar plans for retirement investments authorized in the future under federal law. It does not, however, include similar plans for retirement investments which were authorized under federal law at the time of its enactment.[2] Individual retirement annuities were authorized under federal law at the time of the enactment of Section 627.6(8)(f) but are not listed therein and therefore are not subject to exemption under Section 627.6(8)(f). Where the statutory language is clear, our inquiry need go no further.

Notwithstanding the clarity of the statutory language, the Debtor argues that the term "individual retirement account" in Section 627.6(8)(f) of the Iowa Code includes both individual retirement accounts authorized under Section 408(a) of the Internal Revenue Code and individual retirement annuities authorized under Section 408(b) of the Internal Revenue Code. 26 U.S.C. § 408. The Debtor argues that the term "individual retirement account" is a general term which includes both individual retirement accounts and individual retirement annuities. For example, the Debtor points to Section 408 of the Internal Revenue Code which is captioned "Individual retirement accounts" yet pertains to both types of accounts. A statutory caption does not supersede the actual statutory language, however. In enacting Section 408 of the Internal Revenue Code, the United States Congress separately defined the term "individual retirement account" and the term "individual retirement annuity." Congress neither used the terms interchangeably, nor used the term "individual retirement annuity" as a subset of "individual retirement accounts."

Furthermore, throughout the Iowa Code, the Iowa legislature has separately identified individual retirement accounts authorized under Section 408(a) of the Internal Revenue Code and individual retirement annuities authorized under Section 408(b) of the Internal Revenue Code. <u>See</u>, <u>e.g.</u>, Iowa Code § 97A.6B(1)(b)(1) and (2); Iowa Code § 97B.53B(1)(b)(1) and (2); Iowa Code § 411.6B(1)(b)(1) and (2); Iowa Code § 508.36(6)(c)(2) and (7); Iowa Code § 508.38(1); Iowa Code § 602.9105(1)(b)(1) and

---

[2]Subsection (f) of Iowa Code Section 627.6(8) was enacted in 1999. Individual retirement annuities were authorized under federal law at that time. <u>See</u> 26 U.S.C. § 408(b).

(2). The Iowa legislature thus clearly knew how to include individual retirement annuities within the ambit of a specific provision. The lack of a reference to individual retirement annuities in Section 627.6(8)(f) is therefore a clear indication that such retirement investment vehicles do not fall within its ambit.

We acknowledge the severity of this result for the Debtor; however, the role of this court is to enforce the statutory language according to its terms, not to expand the exemptions provided by the Iowa legislature. Hartford Underwriters Insurance Company v. Union Planters Bank, N.A., 120 S.Ct. 1942, 1947 (2000); Eilbert v. Pelican (In re Eilbert), 162 F.3d 523, 526 (8th Cir. 1998).

In his appeal, the Trustee alternately argues that if the Debtor's individual retirement annuity falls within the scope of Iowa Code Section 627.6(8)(f), the amount which is subject to exemption is limited by Section 627.6(8)(f)(3) to either $2,000 (plus increases), assuming the transfer into the Equi-Select Account constituted a single contribution, or to $2,000 (plus increases) for each year during which contributions to the Midland 401(k) plan were made, assuming the transfer to the Equi-Select Account was a rollover and not a "single contribution." We need not address this issue because we have determined that the Equi-Select Account does not fall within the scope of Iowa Code Section 627.6(8)(f).

CONCLUSION

As an Iowa resident, the Debtor's exemption options are limited to those provided for by the Iowa legislature. The Debtor's individual retirement annuity does not fall within the scope of Iowa Code Section 627.6(8)(f). The Debtor therefore cannot exempt his interest in the Equi-Select Account from property of his bankruptcy estate pursuant to 11 U.S.C. § 522(b)(2).

DREHER, Bankruptcy Judge, dissenting.

I disagree. The majority concludes that the statutory language of Iowa Code § 627.6(8)(f) is clear. In my view, reasonable minds could differ as to the meaning of the statute; and it is, therefore, ambiguous. Even if the majority is correct that there is a "plain meaning" of the statute, such a reading presents the rare case where it must be disregarded because it leads to an absurd result and because it produces a result demonstrably at odds with the intentions of the legislature.

Of course I agree with the general premises of statutory construction enunciated by the majority: we live in a world of "plain meaning" statutory construction. Hartford Underwrites Ins. Co. v. Union Planters Bank, N.A., 120 S.Ct. 1942, 1947 (2000). Where I part company with the majority, however, is in its judgment that § 627.6(8)(f) is clear. I think this statutory language quite ambiguous. If a statute is ambiguous, of course, courts may consider (1) the object sought to be obtained; (2) the circumstances under which the statute was enacted; (3) the legislative history; (4) the common law or former statutory provisions, including laws upon the same or similar subjects; (5) the consequences of a particular construction; (6) the administrative construction of the statute; and (7) the preamble or statement of policy. Iowa Code § 4.6.

Moreover, a court must construe a statute to avoid absurd results, even when a literal interpretation would yield a contrary result. Iowa v. Green, 470 N.W.2d 15, 18 (Iowa 1991). The plain meaning is also not conclusive in cases in which the literal application of a statute will produce a result demonstrably at odds with the intentions of the drafters. United States v. Ron Pair Enters., Inc., 489 U.S. 235, 242 (1989); Waugh v. Internal Revenue Serv. (In re Waugh), 109 F.3d 489, 493 (8th Cir. 1997).

Iowa Code § 627.6(8)(f), added by the Iowa legislature in 1999, exempts "assets . . . in any . . . plans or contracts as follows: 1) [t]ransfers from a retirement plan qualified under [ERISA] to another ERISA-qualified plan or to another pension or retirement plan authorized under federal law, as described in subparagraph (3)." Iowa Code § 627.6(8)(f). Subparagraph (3) lists "simplified employee pension plans, self-employed pension plans, Keogh plans . . . , *individual retirement accounts*, Roth individual retirement accounts, savings incentive matched plans for employees, salary reduction simplified employee pension plans. . . , *and similar plans for retirement investments authorized in the future under federal law . . . .*" Id. (emphasis added). There are multiple reasons why the majority errs in finding that the phrase "individual retirement accounts" does not include the individual retirement annuity contract purchased by the Debtor.

*First*, in ordinary parlance, it is common to equate individual retirement annuities and individual retirement accounts.

> Two types of individual retirement plans are recognized: individual retirement accounts, which are usually investment accounts with banks or mutual funds or, individual retirement annuities, which are annuity or endowment contracts issued

by insurance companies. These two types usually are collectively referred to as IRAs.

2 Boris I. Bittker & Lawrence Lokken, Federal Taxation of Income, Estates and Gifts § 62.3.1, at 62-39 (2d ed. 1990). Another commentator states:

> An IRA has become the generic name for an individually directed and established savings program that permits individuals having earned income and their spouses to establish a personal retirement savings program . . . . There are two basic types of plans than can be described under the generic heading of IRA. These include IRAs described in Section 408(a) and individual retirement annuities described in Section 408(b).

Robert E. Madden, Tax Planning for Highly Compensated Individuals § 7.06, 7.06[1] (2000); see also In re Huebner, 141 B.R. 405, 408 (N.D. Iowa 1992) (finding no distinction between individual retirement annuities and individual retirement accounts); In re Moss, 143 B.R. 465, 465 (Bankr. W.D. Mich. 1992) ("An individual retirement annuity is a variant on the individual retirement account theme."); American Honda Finance Corp. v. Cilek (In re Cilek), 115 B.R. 974, 976 n.1 (Bankr. W.D. Wis. 1990) (finding no significant difference between individual retirement accounts and individual retirement annuities) . Thus, if the Iowa legislature was using ordinary parlance, at least as the commentators view it, its use of the phrase "individual retirement accounts," was intended as a collective reference to both individual retirement accounts and individual retirement annuities. The language of the statute is, therefore, far from unambiguous.

*Second*, the Iowa legislature's exemption of plans or contracts exempt under federal law is a clear reference to the relevant federal statute, 26 U.S.C. § 408. That statutory section is entitled "Individual Retirement Accounts" and includes a definition of both an *individual retirement account* (§ 408(a)) and an "*individual retirement annuity*" (§ 408(b)). The point is not, as the majority urges, that a statutory caption cannot supercede statutory language. The point is that the statute in question here generally refers to federal law which covers both individual retirement accounts and individual retirement annuities as subheads under a title "individual retirement accounts." It is not at all clear that the legislature intended to refer only to one subset of such statute and not the other. I disagree, therefore, with the

8

majority's view that "Congress did not use term 'individual retirement annuity' as a subset of the larger 'individual retirement account.'"[3]

*Third*, § 627.6(8)(f) is replete with language demonstrative of a statutory intent towards broad construction and, of course, exemption statutes are to be construed liberally in favor of the debtor, as the majority acknowledges. See Eilbert v. Pelican (In re Eilbert), 162 F.3d 523, 526 (8th Cir. 1998). The important statutory words are "*any*" plans or contracts which contain assets transferred from ERISA qualified plans to other ERISA qualified plans or pension or retirement plans authorized under federal law, "*as described in Subparagraph 3.*" Both the prefatory language "*any*" and the direction "*as described in*" are broad ways of approaching the topic. There is nothing in such wording to suggest the parsimonious reading tendered by the majority. Moreover, after reciting a series of types of plans that are covered, the legislature provides a catchall "*and similar plans for retirement investments authorized in the future under federal law.*" While the majority is correct in stating that such words do not capture the debtor's individual retirement annuity because such annuities were authorized at the time of enactment, again the majority misses the point. Such language clearly imports a statutory intent to capture the universe of authorized retirement plans, now and in the future. The majority's reading leaves individual retirement annuities authorized prior to 1999 as virtually the only, if not the only, retirement planning vehicle *not* exempt from creditor attack. In interpreting statutory language we must attempt to reach a reading that avoids absurd results. Green, 470 N.W.2d at 18. The majority's interpretation fails in this regard.

To prop up its conclusion as to clarity, the majority mainly relies on citation to six instances where the Iowa Code separately lists individual retirement accounts and individual retirement annuities, and argues that these statutory provisions indicate that the Iowa legislature knew the difference between individual retirement accounts and individual retirement annuities and that it used such knowledge when it only listed individual retirement accounts in § 627.6(8)(f).

---

[3]The majority also makes much of the fact that the Debtor's annuity contains no restriction on the Debtor's use or transfer, other than tax consequences and penalties. However, the same would be true if the Debtor held an "individual retirement account" rather than an "individual retirement annuity." See In re Matthews, 65 B.R. 24 (Bankr. N.D. Iowa 1986). Such is the difference between ERISA qualified and non-ERISA qualified plans.

9

Four of these statutes are more helpful than the other two because they more directly relate to issues surrounding the rollover of a retirement plan. These statutes indicate the types of retirement plans that are eligible to receive rollovers from public employee pension accounts. Each one defines an eligible retirement plan to include "(1) An individual retirement account in accordance with section 408(a) of the federal Internal Revenue Code" and "(2) An individual retirement annuity in accordance with section 408(b) of the federal Internal Revenue Code." Iowa Code §§ 97A.6B(1)(b)(1) and (2) (Public Safety Peace Officers' Retirement, Accident and Disability System); 97B.53B(1)(b)(1) and (2) (Iowa Public Employees' Retirement System); 411.6B(1)(b)(1) and (2) (Retirement System for Police Officers and Fire Fighters); 602.9105(1)(b)(1) and (2) (Judicial Retirement System).

The majority is correct that these statutes establish that the legislature knew how to distinguish between individual retirement accounts and individual retirement annuities. However, unlike the statute at issue in this case which only refers to federal law, each of these statutes provides reference to § 408(a) and § 408(b) of the Internal Revenue Code to make the distinction. Therefore, these statutes indicate more clearly than § 627.6(8)(f) that the term "individual retirement account" was not meant to include individual retirement annuities. Indeed, these four statutory provisions also indicate the Iowa legislature manifestly knew how to make an unambiguous distinction between individual retirement accounts and individual retirement annuities if it so desired.

More important, however, is the substance of these statutes. The legislature treated both types of plans identically. It found both individual retirement accounts and individual retirement annuities to be eligible retirement plans. See Iowa Code §§ 97A.6B(1)(b)(1) and (2); 97B.53B(1)(b)(1) and (2); 411.6B(1)(b)(1) and (2); 602.9105(1)(b)(1) and (2). Such treatment in the context of these statutes supports an interpretation of § 627.6(8)(f) that also treats individual retirement accounts and individual retirement annuities equally.

The other two statutes cited by the majority relate to regulation of life insurance companies. Iowa Code §§ 508.36; 508.38. Because they do not directly relate to the same or similar subject as § 627.6(8)(f), they are less helpful in determining the intent of the legislature and may not even be appropriate to consider. See Iowa Code § 4.6(4) (providing that the court may consider laws upon the same or similar subjects). However, the majority includes these statutes as further indication that the Iowa legislature knew how to distinguish between individual retirement accounts and individual retirement annuities. Both refer to "individual retirement accounts or individual retirement annuities under section 408 of the Internal

10

Revenue Code." Iowa Code §§ 508.36; 508.38. While these statutes may help to establish that the Iowa legislature knew how to make the distinction, the majority ignores another statute that shows that the legislature also knew how to refer only to individual retirement accounts when it so intended. See Iowa Code § 633.357(1)(a) (referring to "an individual retirement account in accordance with section 408(a) of the Internal Revenue Code"). Thus, the Iowa Code contains contrasting evidence. It indicates both that the legislature had the ability to specifically *include* individual retirement annuities, Iowa Code §§ 508.36; 508.38, and that it had the ability to specifically *exclude* individual retirement annuities, Iowa Code § 633.357(1)(a). It chose to do neither in § 627.6(8)(f). Therefore, these statutes create an even greater ambiguity.

In sum, the language of the statute is ambiguous. Reference to federal law and to other sections of the Iowa Code exacerbate rather than alleviate the ambiguity. Because of this ambiguity, the court's analysis may extend beyond the plain meaning of the statute. In this case it is particularly appropriate to consider the legislative history, the object sought to be obtained in enacting the statute, the circumstances under which the statute was enacted, and the consequences of a particular construction. See Iowa Code § 4.6. Examination of these sources also reveals that, even if the language is unambiguous, the plain meaning espoused by the majority leads to a result demonstrably at odds with the intentions of the drafters.

The legislative history of § 627.6(8)(f) indicates the purpose behind enacting the statute and the circumstances under which it was enacted:

> The purpose of this bill is to eliminate the discrimination that currently exists in Iowa law regarding the exemption of retirement plans. Currently, ERISA qualified plans, such as most employer-maintained pension plans, are exempt from the claims of creditors. However, self-employed persons using a Keogh plan or IRA as their retirement vehicle are not similarly protected. Likewise, those who have taken their previously safe ERISA qualified pensions and rolled them over into an IRA due to plan termination, retirement, job loss, or other causes have, by such rollover, subjected their formerly protected assets to the claims of creditors. These amendments will eliminate such disparity and will clarify the types of federally authorized plans which Iowans will be entitled to claim as exempt.
>                                              * * *

11

This bill also protects rollover contributions to IRAs by excluding them from the contribution limit within the 24-month period prior to claiming an exemption.[4]

Iowa Senate File 105 (1999).

This statement supports an interpretation that includes individual retirement annuities within the term individual retirement accounts. The purpose of the statute is to eliminate disparity between debtors who participate in ERISA plans and debtors who transfer funds from an ERISA plan to another federally qualified plan. This appeal presents the precise problem the Iowa legislature intended to cure. There is no basis for concluding that the Iowa legislature wished to maintain a disparity for debtors who chose individual retirement annuities rather than other qualified plans. Accordingly, the legislative history suggests that the ambiguity in the statute should be resolved in favor of exempting the Debtor's annuity. At the very least, the legislative history demonstrates that the majority's decision leads to a result not intended by the legislature. United States v. Ron Pair Enters., Inc., 489 U.S. 235, 242 (1989); Waugh v. Internal Revenue Serv. (In re Waugh), 109 F.3d 489, 493 (8th Cir. 1997).

On balance, then, I believe the legislature intended to include individual retirement annuities within the scope of the term individual retirement accounts. This conclusion is supported by the legislative history and by the language of the statute itself. I would affirm the bankruptcy court's holding that the Debtor's individual retirement annuity is exempt pursuant to Iowa Code § 627.6(8)(f).

The majority does not reach the Trustee's alternative argument that, even if the Debtor's individual retirement annuity is exempt under § 627.6(8)(f), such exemption is limited to only $2,000 (plus increases) or $2,000 (plus increases) for each year during which the Debtor made contributions to the Midland 401(k) plan. Because I would affirm the bankruptcy court's decision, I must also address the Trustee's alternative argument.

The statute exempts "[t]ransfers from a retirement plan qualified under [ERISA] to another ERISA-qualified plan or to another pension or retirement plan authorized under federal law, *as described in subparagraph (3)*." Iowa Code § 627.6(8)(f) (emphasis added). Subparagraph (3) provides that: "For simplified employee pension plans, self-employed pension plans, Keogh plans . . ., individual retirement accounts, Roth individual retirement accounts, savings incentive matched plans for employees,

---

[4]The legislature subsequently deleted the 24 month rule.

salary reduction simplified employee pension plans . . ., and similar plans for retirement investments authorized in the future under federal law, *the exemption for contributions shall not exceed, for each tax year of contributions, the actual amount of the contribution or two thousand dollars, whichever is less*." Id. (emphasis added).

The Trustee argues that because the transfer must be to an authorized plan "as described in subparagraph (3)," the exemption must be confined to the $2,000 annual contribution limitation contained in subparagraph (3). The Trustee contends, first, that only $2,000 of the entire amount transferred is exempt because it was all "contributed" in a single tax year. In the alternative, the Trustee contends that the Debtor is limited to a $2,000 exemption for each year he contributed to the Midland plan.

In support of this argument, the Trustee cites to In re Barshak, 185 B.R. 210 (Bankr. E.D. Pa. 1995), rev'd, 195 B.R. 321 (E.D. Pa. 1996), rev'd, 106 F.3d 501 (3d Cir. 1997) and In re Goldman, 182 B.R. 622 (Bankr. D. Mass. 1995). In these cases, the courts determined that a rollover contribution to an IRA was subject to the same yearly limitation under the exemption statute as any other contribution because the statutes did not make any distinction between contributions and rollover contributions. Barshak, 185 B.R. at 213; Goldman, 182 B.R. at 626.

To the contrary, the statute at issue in this case specifically distinguishes between "contributions" and "transfers."[5] Because the Iowa legislature referred to rollover contributions as *transfers*, such transfers should not be subject to the $2,000 annual limitation for *contributions*. Applying the $2,000 limitation to transfers would impermissibly render the use of the distinct terms *transfer* and *contribution* superfluous. See Miller v. Westfield Ins. Co., 606 N.W.2d 301, 305 (Iowa 2000) (noting that a statute should not be construed so as to make any part of it superfluous). Accordingly, the $2,000 limitation contained in subparagraph (3) for contributions does not apply to transfers governed by subparagraph (1).[6]

Based upon the foregoing, I would affirm the decision of the bankruptcy court in its entirety.

---

[5]The statute contains a definition for contributions: "'Contributions' means contributions by the debtor and by the debtor's employer." Iowa Code § 627.6(8)(f). It does not contain a definition for transfer.

[6]The Debtor argued in the court below that the $2,000 limitation was unconstitutional. Because such argument has not been made before this court, it has been waived. In any event, because I would find that the $2,000 limitation is inapplicable, I need not address the statute's constitutionality.

A true copy.

Attest:

CLERK, U.S. BANKRUPTCY APPELLATE PANEL FOR THE
EIGHTH CIRCUIT